IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

HAWAIIAN TELCOM                )    CIVIL NO. 10-00112 HG-LEK
COMMUNICATIONS, INC.,          )
                               )
          Petitioner,          )
                               )
     vs.                       )
                               )
TATA AMERICA INTERNATIONAL     )
CORPORATION, also known as     )
TATA AMERICAN INTERNATIONAL    )
CORPORATION,                   )
                               )
          Respondent.          )
_____ )

**FINDINGS AND RECOMMENDATION TO GRANT
PETITIONER'S APPLICATION TO COMPEL ARBITRATION**

Before the Court is Petitioner Hawaiian Telcom
Communications, Inc.'s ("Hawaiian Telcom") Application to Compel
Arbitration ("Application"), filed on February 3, 2010 in state
court.  Respondent Tata America International Corporation
("Tata") removed the proceedings on March 2, 2010 and filed its
memorandum in opposition to the Application on April 9, 2010.
Hawaiian Telcom filed its reply on April 19, 2010.  This matter
came on for hearing on May 3, 2010.  Appearing on behalf of
Hawaiian Telcom were Jeffrey Portnoy, Esq., Elijah Yip, Esq., and
Scott Simon, Esq., and appearing on behalf of Tata was Robert J.
Smolenski, Esq.  At the hearing, counsel stipulated that this
Court could receive and consider a January 25, 2010 e-mail, which
included prior e-mail correspondence, in connection with the
Application.  The document was filed on May 4, 2010.  After

careful consideration of the Application, supporting and opposing documents, and the arguments of counsel, this Court HEREBY FINDS AND RECOMMENDS that Petitioner's Application be GRANTED for the reasons set forth below.

## BACKGROUND

Hawaiian Telcom selected Tata to provide a business CRM system. On February 23, 2009, Hawaiian Telcom and Tata entered in a Master Services Agreement.[1] The Master Services Agreement provided the framework for future contracts called "Schedules". Unless otherwise stated in the schedule, the provisions of the Master Services Agreement are incorporated into each schedule. At issue in the instant case is Schedule 2, dated February 23, 2009 and effective March 2, 2009.[2] Hawaiian Telcom states that, on December 11, 2009, it terminated Schedule 2 for cause. On December 18, 2009, Hawaiian Telcom demanded payment from Tata for the damages it incurred as a result of Tata's breach of Schedule 2 and Tata's fraudulent conduct. After Tata refused payment, Hawaiian Telcom invoked the dispute resolution clause of the Master Services Agreement. [Mem. in Supp. of Application at 2.]

Section 16.15 of the Master Services Agreement states,

---

[1] The Master Services Agreement is attached to the Application as Exhibit A to the Declaration of Jeffrey S. Portnoy ("Portnoy Application Declaration").

[2] Schedule 2 is attached to the Application as Exhibit B to the Portnoy Application Declaration.

2

in pertinent part:

> **Governing Law; Venue; Arbitration.**  The validity,
> interpretation, and performance of this Agreement
> shall be controlled by and construed under the
> laws of the State of New York, U.S.A., excluding
> any choice-of-law rules that would require the
> application of the laws of any other jurisdiction,
> and excluding the applicability of the United
> Nations Convention on Contracts for the
> International Sale of Goods.  Except as otherwise
> provided below in this paragraph, any unresolved
> dispute, claim or controversy arising out of or
> relating to or in connection with this Agreement,
> including any question regarding the existence,
> breach, termination, enforcement, interpretation
> or validity thereof, including the determination
> of the scope or applicability of this agreement to
> arbitrate, shall be finally settled by binding
> arbitration in accordance rules [sic] and
> procedure for commercial arbitration of the
> American Arbitration Association (AAA) at the
> office of the AAA located in Honolulu, Hawaii (or
> such other arbitration organization located in
> Honolulu on which the parties may mutually agree)
> and with Hawaii Revised Statutes § 658A. . . .

[Master Services Agreement at 28.[3]]  According to the

Application, because AAA does not operate an office in Honolulu,

Hawaiian Telcom and Tata mutually agreed to have Dispute

Prevention & Resolution, Inc. ("DPR") conduct the arbitration.

[Mem. in Supp. of Application at 3; Exhs. C-D to Portnoy

Application Decl.]  Hawaiian Telcom submitted its Arbitration

Demand ("Demand") to DPR on January 14, 2010.  [Exh. E to Portnoy

Application Decl.]

---

[3] This Court will refer to the portion of § 16.15 from
"Except as otherwise provided" to "Hawaii Revised Statutes §
658A" as "the Arbitration Clause".

3

On January 21, 2010, counsel for Tata, Bud Holman, Esq., requested an extension of DPR's deadline to respond to the Demand to March 10, 2010. [Mem. in Supp. of Application at 4; Exh. G to Portnoy Application Decl.] Although Hawaiian Telcom initially declined to agree to the extension, it later offered to agree to a March 9 deadline, provided that the parties selected an arbitrator by February 8, 2010 and participated in a pre-arbitration scheduling conference by February 15, 2010. Tata responded that this did not allow it sufficient time to review the list of potential arbitrators and informed Hawaiian Telcom that it was going to withdraw its consent to utilizing DPR instead of AAA. [Exh. H to Portnoy Application Decl. at 2.] Hawaiian Telcom asked Tata to provide confirmation by January 29, 2010 that it intended to abide by the prior agreement to use DPR. Hawaiian Telcom informed Tata that, if it did not confirm, Hawaiian Telcom would file an action to compel arbitration. [Id. at 1.] Hawaiian Telcom argues that Tata's failure to respond to the request for confirmation effectively repudiated the agreement. [Portnoy Application Decl. at ¶ 7.]

In the Application, Hawaiian Telcom states that it is undisputed that its claims are subject to arbitration and that the parties have an agreement to arbitrate. The dispute in the instant case concerns the controlling terms of the arbitration, in particular the provision regarding the forum in which the

4

arbitration will be held.  Hawaiian Telcom argues that the
parties' entered into a valid and enforceable agreement to use
DPR to administer the arbitration and that Tata's repudiation of
its consent to use DPR constitutes a breach of contract.
Hawaiian Telcom urges the Court to compel Tata to submit to the
DPR arbitration.

Hawaiian Telcom argues that the Arbitration Clause
clearly indicates that the parties intended to conduct any
arbitration in Honolulu.  Insofar as AAA does not maintain an
office in Honolulu, having AAA administer the arbitration from
its offices outside of Honolulu would contravene the intent of
the parties.  Further, even if Tata had a right to use AAA, it
knowingly, intentionally, and voluntarily waived that right by
agreeing to use DPR in lieu of AAA.

In its memorandum in opposition to the Application,
Tata alleges that it was Hawaiian Telcom's breach of the Master
Services Agreement that prevented Tata from timely completing the
project and that Hawaiian Telcom wrongfully terminated the Master
Services Agreement without prior notice or an opportunity to cure
any alleged breach.  [Mem. in Opp. at 3-4.]  Tata alleges that,
in suggesting that the parties use DPR instead of AAA, Mr.
Portnoy led Mr. Holman to believe that the parties could only
chose from Honolulu dispute management firms, of which DPR was
the most prominent, because AAA did not have an office located in

Honolulu.  "Mr. Holman initially acquiesced, under the circumstances, in the choice of DPR, but never agreed to eliminate the requirement that the AAA rules and procedure applied."  [Id. at 4 (citing Ex. D of Hawaiian Telcom's Application).]  According to Tata, Mr. Holman withdrew his acquiescence to using DPR after learning that AAA conducted extensive operations in Hawaii[4] and after Hawaiian Telcom insisted upon the application of DPR's rules instead of the AAA's rules.  [Id. at 5.]

Tata states that it filed a Notice of Arbitration ("AAA Notice") in accordance with the "AAA Commercial Arbitration Rules and Mediation Procedures" ("AAA Commercial Rules").  Tata filed the AAA Notice with AAA's International Centre for Dispute Resolution ("ICDR") because the dispute involves international activities.[5]  On March 8, 2010, the ICDR notified the parties that it received the AAA Notice.  [Id. at 2.]  Tata notes that Hawaiian Telcom failed to object to the AAA Notice or to the

---

[4] In an April 2, 2010 letter to Tata's counsel, AAA Vice President Dwight James stated that, in the past five years, AAA administered 550 domestic arbitration cases in Hawaii using a roster of twenty-eight arbitrators.  [Mem. in Opp., Decl. of Bud G. Holman ("Holman Decl."), Exh. B.]

[5] Tata, a New York corporation with its principal place of business in New York, New York, is a wholly owned subsidiary of Tata Consultancy Services, an Indian corporation with its principal place of business in Mumbai, India.  Tata provides world wide systems integration and outsourcing.  The project in dispute involved an onsite location in Hawaii and an offshore location in India.  [Mem. in Opp. at 3, 6.]

ICDR's jurisdiction within fifteen days of March 8, 2010, as required by the AAA Commercial Rules.  Hawaiian Telcom only made a March 25, 2010 submission which sought to preserve its right to respond to the AAA Notice after the ruling on the instant Application; the submission did not object to ICDR's jurisdiction.  Although Hawaiian Telcom did not respond to the AAA Notice, the AAA Commercial Rules provide that the arbitration is to move forward and that Hawaiian Telcom is deemed to have denied the claim.  Tata states that the next step in the ICDR proceeding is to appoint an arbitrator.  [Id. at 6-7.]

Tata argues that the Application is moot in light of the pending ICDR arbitration and that requiring Tata to submit to an arbitration administered by DPR according to DPR's rules would violate the Arbitration Clause, be contrary to the parties' intentions, and be unfair to Tata.  First, Tata argues that the Master Services Agreement clearly involved an international transaction and that the AAA Commercial Rules applied.  Even though the Arbitration Clause leaves some flexibility to determine which organization will conduct the arbitration, there is no ambiguity that the AAA Commercial Rules apply.  Tata argues that strict adherence to the Arbitration Clause requires that AAA conduct the arbitration in Honolulu.  Tata also argues that, to the extent that there is any dispute about whether the parties have agreed to use DPR or AAA, it is AAA that must rule upon the

issue.

Tata argues that, because Mr. Portnoy misled Mr. Holman into believing that arbitrating with AAA in Honolulu was not possible, Tata never entered into an informed, binding agreement to use DPR, and never agreed to forego the use of the AAA Commercial Rules.  Tata asserts that it withdrew its acquiescence to using DPR once it learned that it was possible for AAA to conduct an arbitration in Honolulu.  Even to the extent that it temporarily agreed to use DPR, Tata argues that there was a mutual misunderstanding about what was agreed to.  Hawaiian Telcom apparently believed that the parties agreed to use DPR and DPR's procedural rules, but Tata believed that the parties agreed to use DPR and the AAA Commercial Rules.  Tata argues that, because the applicable rules is an essential term of the agreement, the lack of a meeting of the minds means that there was no enforceable agreement to use DPR.

In its reply, Hawaiian Telcom notes that, after Mr. Portnoy proposed the use of DPR on December 23, 2009, Tata's general counsel responded that Tata management and outside counsel needed to be consulted.  [Reply, Decl. of Jeffrey S. Portnoy ("Portnoy Reply Decl."), Exh. I.]  Mr. Portnoy discussed the use of DPR with Mr. Holman on December 29, 2009.  During that conversation, Mr. Portnoy stated that AAA did not maintain an office in Honolulu, but he never represented that AAA conducted

no arbitrations in Honolulu.  [Portnoy Reply Decl. at ¶ 3.]  Mr.
Holman did not inform Mr. Portnoy of Tata's consent to use DPR
until a week later.  [Exh. D to Portnoy Application Decl.]
Hawaiian Telcom argues that Mr. Holman withdrew Tata's
acquiescence to use DPR because Hawaiian Telcom would not grant
Tata a sufficient extension to accommodate Mr. Holman's scheduled
vacation from January 28, 2009 to March 4, 2010.  [Reply at 3-4.]

Hawaiian Telcom argues that the district court, and not
an arbitrator, should decide whether AAA or DPR is the proper
forum.  Although Tata argues that the arbitrator must determine
arbitrability, the actual dispute in this case concerns the
selection of an arbitrator, not whether the substantive claims
are subject to arbitration.  The selection of an arbitrator is an
issue for the courts.  Hawaiian Telcom notes that the Arbitration
Clause provides than an arbitration shall be conducted pursuant
to Hawaii Revised Statutes Chapter 658A, and § 658A-11 provides
that, if the parties fail to agree on a method to select an
arbitrator, the court shall appoint the arbitrator on motion of a
party to the arbitration proceedings.  Further, insofar as the
parties dispute whether AAA is the proper arbitral form, it is
illogical to submit the issue to AAA for determination.  Hawaiian
Telcom also argues that, although the scope of an agreement to
arbitrate is subject to arbitration, whether the parties agreed
to arbitrate in the first place is for the courts to decide as a

threshold issue.  In the present case, the issue is whether there is an agreement to arbitrate before DPR.

Hawaiian Telcom argues that Tata has not presented a justifiable basis for withdrawing its acquiescence to the use of DPR.  Tata has not established that a mutual mistake voids the agreement to use DPR.  Both Hawaii law and New York law require that both parties share the same erroneous belief as to a material fact.  Tata claims that Mr. Holman mistakenly believed that AAA did not conduct arbitrations in Honolulu, but Mr. Portnoy did not share this belief, nor did he ever represent to Mr. Holman that AAA did not conduct arbitrations in Honolulu. Moreover, under either Hawaii law or New York law, Tata cannot void the agreement based on mistake if its mistaken belief was due to its own negligence.  Mr. Holman did not investigate whether AAA conducted arbitrations in Honolulu until after he agreed to use DPR.  Further, he had sufficient time to investigate the matter before he agreed to use DPR.  Thus, Tata must bear the risk of Mr. Holman's failure to investigate the matter before agreeing to use DPR.

As to Tata's argument that there was a mutual mistake regarding whether the AAA Commercial Rules or DPR rules would apply to the arbitration, Hawaiian Telcom asserts that the relevant differences in this case - the deadline to respond to the arbitration demand and the selection of an arbitrator - are

10

minimal.  The AAA Commercial Rules only provide for one day more
than DPR's rules to respond to an arbitration demand and to
mutually agree on an arbitrator from the organization's list of
neutral arbitrators.  These differences would not have a material
effect on the arbitration and therefore the dispute about the
applicable rules is not material to the enforcement of the
Arbitration Clause.  Finally, Tata argues that, even if there was
no agreement to use DPR rules, that does not negate the agreement
to use DPR; it would only mean that DPR would conduct the
arbitration using the AAA Commercial Rules.

**DISCUSSION**

**I.   Whether AAA Should Decide Proper Forum**

As an initial matter, this Court must address Tata's
argument that AAA must decide whether the parties agreed to use
AAA or DPR.  It is undisputed that the parties entered into a
valid and binding agreement to arbitrate disputes arising out of,
relating to, or in connection with the Master Services Agreement,
and it is undisputed that the parties' underlying dispute about
the project is subject to that agreement.  The parties dispute
whether they must use AAA or DPR to administer the arbitration,
*i.e.*, they disagree about the selection of the arbitration
organization, which also affects the appointment of the
arbitrator.  The Arbitration Clause requires that the arbitration
shall be conducted in accordance with Haw. Rev. Stat. Chapter

11

658A.  Haw. Rev. Stat. § 658A-11(a) states, in pertinent part:

> If the parties to an agreement to arbitrate agree
> on a method for appointing an arbitrator, that
> method shall be followed, unless the method fails.
> If the parties have not agreed on a method, the
> agreed method fails, or an arbitrator appointed
> fails or is unable to act and a successor has not
> been appointed, the court, on motion of a party to
> the arbitration proceeding, shall appoint the
> arbitrator.

The Arbitration Clause includes a method for selecting
an arbitration organization: the parties shall use AAA at its
office in Honolulu or another arbitration organization that they
mutually agree upon.  This method has failed, as evidenced by the
fact that Hawaiian Telcom has initiated arbitration proceedings
before DPR and Tata has initiated arbitration proceedings before
AAA.  This Court therefore CONCLUDES that, pursuant to § 658A-
11(a), the district court must appoint the arbitration
organization in response to the Application.

## II.  Applicable Law

Although Chapter 658A governs arbitrations of disputes
concerning the Master Services Agreement, the Master Services
Agreement provides that the agreement as a whole is to be
construed according to New York law.  The choice of law
provision, however, does not necessarily end the inquiry into
what law applies.

Pursuant to 28 U.S.C. § 1332(a)(1), this district court
has diversity jurisdiction over the instant case because Hawaiian

12

Telcom is a Delaware citizen and Tata is a New York citizen, and the amount in controversy exceeds $75,000.00, excluding interest and costs.[6]  [Notice of Removal at 2.]  A federal court sitting in diversity jurisdiction applies the forum state's substantive law, see Erie R.R. v. Tompkins, 304 U.S. 64 (1938), including the forum state's choice of law analyses.  See Van Dusen v. Barrack, 376 U.S. 612, 628 (1964).

The Hawaii choice of law analysis places primary emphasis on the determination of "which state would have the strongest interest in seeing its laws applied to the particular case."  Unified W. Grocers, Inc. v. Twin City Fire Ins. Co., 457 F.3d 1106, 1111 (9th Cir. 2006) (quoting Lewis v. Lewis, 69 Haw. 497, 748 P.2d 1362, 1365 (1988)); see also Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co., 117 Haw. 357, 364, 183 P.3d 734, 741 (2007).  This district court, however, has recognized that, under Hawaii law, "'a choice of law provision provided in a contract between the parties will generally be upheld.'"  Hawaii Forest & Trail Ltd. v. Davey, CV 07-00538 HG-BMK, 2009 WL 47331, at *3 (D. Haw. Jan. 8, 2009) (quoting Del Monte Fresh Produce, Inc. v. Fireman's Fund Ins. Co., 117 Haw.

---

[6] Tata also asserted that there was federal jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").  [Notice of Removal at 2.]  The FAA, however, "does not create any independent federal-question jurisdiction."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 (1983).

357, 364, 183 P.3d 734 (2007)).[7]  This Court need not determine
whether the Hawaii choice of law analysis requires the
application of Hawaii law or New York law because the applicable
principles of contract interpretation are the same under either
one, and the Arbitration Clause expressly states that
arbitrations are to be conducted pursuant to Hawaii Revised
Statutes Chapter 658A.

### III.  **Whether the Agreement to Use DPR is Enforceable**

It is a well-established rule of contract
interpretation that, a clear and unambiguous written contract
must be enforced according to the plain and ordinary meaning of
its terms.  See, e.g., Italian Designer Imp. Outlet, Inc. v. New
York Central Mut. Fire Ins. Co., 891 N.Y.S.2d 260, 263 (Sup. Ct.
2009); Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Haw.
487, 495, 78 P.3d 23, 31 (2003).

The parties agree that there is an enforceable
agreement to arbitrate and that the substantive claims at issue
are subject to arbitration.  They also agree that the Arbitration
Clause requires that the arbitration be conducted pursuant to
Haw. Rev. Stat. Chapter 658A and that it be conducted in

---

[7] Del Monte noted that in Airgo, Inc. v. Horizon Cargo
Transport, Inc., 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983),
the Hawaii Supreme Court stated that parties' choice of law
provision will be upheld if that law has some nexus with either
the parties or the contract.  See Del Monte, 117 Haw. at 364-65,
183 P.3d 741-42.

14

Honolulu.  The dispute in this case concerns what entity will
conduct the arbitration and what rules the entity will apply.

The Arbitration Clause provides that the arbitration
will be held "at the office of the AAA located in Honolulu,
Hawaii (or such other arbitration organization located in
Honolulu on which the parties may mutually agree) . . . ."  The
parties agree that AAA does not maintain a physical office in
Honolulu, Hawaii.  It is evident that the attorneys for the
parties agreed to hold the arbitration at the office of DPR.  Mr.
Portnoy proposed the use of DPR in his December 23, 2009 letter,
[Exh. C to Portnoy Application Decl.,] and Mr. Holman agreed to
this through his secretary, Patricia Glaviano, on January 5,
2010.  [Exh. D to Portnoy Application Decl. ("Mr. Holman asked me
to let you know that Keith Hunter's firm[8] is approved at this
end . . . .").]

At the hearing on the Application, Tata argued that
this agreement to use DPR's office is not binding because Tata
did not agree in writing as required by § 16.12 of the Master
Services Agreement.  Section 16.12 states: "**Amendments.**  No
amendment to, or change, waiver or discharge of, any provision of
this Agreement shall be valid unless in writing and signed by a
duly authorized representative of each Party."  [Exh. A to

---

[8] Mr. Hunter is the President/CEO of DPR.  [Exh. F to
Portnoy Application Decl. (1/20/10 letter to Jeffrey Portnoy and
Bud Holman from Kelly Bryant, DPR Case Manager).]

Portnoy Application Decl. at 28.]  Tata's argument is misplaced.

First, Mr. Holman had, at the very least, apparent authority to bind Tata when he agreed to use DPR's office for the arbitration.  <u>See</u> <u>Davidson v. Metro. Transit Auth.</u>, 844 N.Y.S.2d 359, 360 (App. Div. 2007) (stating that, even where it exceeded the attorney's actual authority, a stipulation entered into by the attorney may bind a client if the attorney had apparent authority); <u>Nelson v. Boone</u>, 78 Haw. 76, 82, 890 P.2d 313, 319 (1995) (stating that, under the doctrine of apparent authority, a client will be bound by the acts of his or her attorney where "the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have" (internal quotation marks, emphasis, and citation omitted)).

Second, the Arbitration Clause expressly allows the parties to mutually agree to another arbitration organization located in Honolulu.  The parties' agreement to use DPR's office is consistent with this provision of the Arbitration Clause. Section 16.12 is inapplicable because the agreement to use DPR was not an amendment to the Master Services Agreement, nor did it change, waive, or discharge any provision of the Master Services Agreement.  The parties therefore were not required to enter into a written agreement to use DPR's office for the arbitration.

Tata also argues that it was entitled to void the

16

agreement to use DPR because there was a mistake regarding whether it was possible to use AAA in Honolulu.  This was not a mutual mistake because Mr. Portnoy did not share Mr. Holman's mistaken belief.  [Reply at 12 (citing Portnoy Reply Decl. at ¶ 3).]  Both Hawaii law and New York law recognize unilateral mistake, but the facts of the instant case do not constitute unilateral mistake.

The Hawaii courts have adopted §§ 152, 153, and 154 of the Restatement (Second) of Contracts regarding the recision of a settlement agreement based on mistake, see Thompson v. AIG Hawaii Ins. Co., Inc., 111 Haw. 413, 419, 142 P.3d 277, 283 (2006), and they have applied the Restatement to other types of contracts as well.  See, e.g., Honda v. Bd. of Trs. of the Employees' Ret. Sys. of Hawaii, 108 Haw. 212, 218, 118 P.3d 1155, 1161 (2005) (applying Restatement (Second) of Contracts §§ 153, 154 to retirement application).  Restatement (Second) of Contracts § 153 states:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
>> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
>> (b) the other party had reason to know of the mistake or his fault caused the mistake.

Even assuming *arguendo* that Mr. Holman's mistaken belief that AAA

17

did not conduct arbitrations in Hawaii was "a basic assumption on
which he made the contract has a material effect on the agreed
exchange of performances that is adverse to him," Tata is not
entitled to void the agreement to use DPR based on unilateral
mistake.  First, the effect of the mistake - being bound to the
agreement to use DPR which he would not have entered into if he
had known of AAA's Hawaii arbitrations - does not render the
contract unconscionable.  Second, Mr. Portnoy did not have reason
to know of Mr. Holman's mistake, nor did his fault cause the
mistake.  Mr. Holman's declaration claims only that he "was
misled . . . into initially going along with the selection of the
DPR on the basis that the choices of an arbitration organization
did not include the AAA <u>because it lacked an office in Honolulu</u> .
. . ."  [Holman Decl. at ¶ 2 (emphasis added).]  It is undisputed
that AAA does not maintain an office in Honolulu.  Mr. Holman
does not state that Mr. Portnoy, or anyone else on Hawaiian
Telcom's behalf, represented that AAA did not conduct
arbitrations in Hawaii.  Finally, insofar as Mr. Holman
apparently would not have agreed to use DPR if he had known the
extent of AAA's arbitrations in Hawaii, Tata bore the risk of
that mistake, <u>see</u> Restatement (Second) of Contracts § 154(c),
because Mr. Holman had ample opportunity to investigate both
AAA's and DPR's background.

     Similarly, Tata cannot establish unilateral mistake

under New York law.  See Estate of Hatch, ex rel. Ruzow v. NYCO

Minerals Inc., 704 N.Y.S.2d 340, 341 (App. Div. 2000) ("[O]ne who

is aware that his or her understanding of a legal obligation may

be erroneous can hardly be characterized as truly mistaken when

he or she intentionally proceeds without further investigation of

his or her rights.  Under these circumstances, there is in

reality no mistake . . . ." (citing Restatement (Second) of

Contracts § 154)).  Thus, under either Hawaii or New York law,

Tata is not entitled to void or rescind the agreement to use DPR

based on unilateral mistake.

        This Court therefore FINDS that the parties entered

into a valid and enforceable agreement to use DPR's office for

the arbitration.

## IV.  **Applicable Arbitration Rules**

        The final issue in this case is whether the agreement

to use DPR's office includes an agreement to use DPR's rules.

The Arbitration Clause states that any dispute:

> shall be finally settled by binding arbitration in
> accordance [with the] rules and procedure for
> commercial arbitration of the American Arbitration
> Association (AAA) at the office of the AAA located
> in Honolulu, Hawaii (or such other arbitration
> organization located in Honolulu on which the
> parties may mutually agree) and with Hawaii
> Revised Statutes § 658A.

As to the issue of the applicable rules and procedure, this

arguably could mean one of two things.  First, it could mean that

the parties agree to use the AAA Commercial Rules AND to hold the

arbitration at AAA's office in Honolulu or in any other arbitration organization's office located in Honolulu upon which the parties mutually agree.  In other words, the parties can agree to hold the arbitration in a Honolulu location other than AAA's office, but they must use the AAA Commercial Rules. Second, it could mean that the parties agree to use the AAA Commercial Rules in AAA's Honolulu office OR, if they mutually agree to another arbitration organization located in Honolulu, then they will use that organization's rules and procedure in addition to its office.  This Court must determine whether these two possible interpretations render the Arbitration Clause ambiguous.

Under both New York law and Hawaii law, a contract provision is ambiguous if it is reasonably subject to two different meanings when read in the context of contract as a whole.  See Italian Designer Import Outlet, 891 N.Y.S.2d at 264 ("An ambiguous word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customary practices, usages and terminology as generally understood in the particular trade or business." (citations and quotation marks omitted)); Allstate Ins. Co. v. Pruett, 118 Haw. 174, 189, 186 P.3d 609, 624 (2008) ("ambiguity is found . . . only when the contract taken as a

whole is reasonably subject to differing interpretation"
(citation and quotation marks omitted)).

In this Court's view, one must strain the wording of
the Arbitration Clause to apply the second possible
interpretation.  The Arbitration Clause is not reasonably subject
to the second possible interpretation when read in the context of
the entire Master Services Agreement.  A plain reading of the
section supports the first possible interpretation.  This Court
therefore finds that the Arbitration Clause requires that the
parties' arbitrations must be conducted pursuant to the AAA
Commercial Rules, regardless of which arbitration organization
conducts the arbitration.  To change the applicable rules would
require an amendment of the Master Services Agreement and a
waiver of the use of the AAA Commercial Rules.  Under § 16.12,
such action requires a written agreement signed by the parties'
authorized representatives.  Mr. Portnoy and Mr. Holman reached
the agreement to use DPR's office in a series of correspondence,
and they did not reduce the agreement to a signed writing.  The
agreement therefore did not effectuate a waiver of the use of the
AAA Commercial Rules in favor of the use DPR's rules.  Thus, the
Court FINDS that DPR must administer the parties' arbitration
pursuant to the AAA Commercial Rules.

## CONCLUSION

On the basis of the foregoing, this Court HEREBY FINDS

21

AND RECOMMENDS that Hawaiian Telcom's Application to Compel Arbitration, filed February 3, 2010, be GRANTED.

The parties are advised that any objection to this Finding and Recommendation is due seventeen calendar days after being served with a copy of this Findings and Recommendation. <u>See</u> Fed. R. Civ. P. 5(b)(2) & 6(d); Local Rule LR74.2.  If an objection is filed with the Court, it shall be captioned "Objections to Magistrate Judge's Findings and Recommendation." A copy of the objection shall be served on all parties.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, May 24, 2010.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**HAWAIIAN TELCOM COMMUNICATIONS, INC. V. TATA AMERICA INTERNATIONAL CORPORATION; CIVIL NO. 10-00112 HG-LEK; FINDINGS AND RECOMMENDATION TO GRANT PETITIONER'S APPLICATION TO COMPEL ARBITRATION**

22